Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARDEEP KUMAR<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Kumar respectfully petitions this Court for a writ of habeas corpus challenging his unlawful detention and seeking his immediate release from immigration custody. This case arises from Respondents' abrupt revocation of liberty that DHS itself previously granted to Petitioner. After initially detaining Petitioner upon his entry into the United States, DHS released him on parole and permitted him to live and work in the community subject to Alternatives to Detention ("ATD") supervision and regular reporting to U.S. Immigration and Customs Enforcement ("ICE"). For nearly four years, Petitioner complied with the conditions imposed upon him and consistently

appeared for his required ICE appointments. Nevertheless, when Petitioner voluntarily appeared for his regularly scheduled ICE appointment on September 2, 2026, Respondents immediately detained him without advance notice, without identifying any violation of his conditions of release, and without providing any individualized pre-deprivation hearing or meaningful opportunity to be heard.

2. Petitioner is a native and citizen of India who entered the United States without inspection on or about October 20, 2022. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. DHS thereafter exercised its authority to release Petitioner on parole. As conditions of his release into the community, Petitioner was enrolled in ATD and required to report to ICE as directed.

3. DHS served Petitioner with a Notice to Appear on December 22, 2022, charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. Petitioner has an asylum application pending before the Immigration Court.

4. From the time of his release until his re-detention, Petitioner complied with DHS supervision. He consistently appeared for his required ICE appointments beginning in December 2022 and committed no known violation of ATD or any other condition imposed upon his release. Petitioner has no criminal history. He has maintained employment authorization based upon his timely filed asylum application, is gainfully employed, and has established family ties in the United States. Throughout this period, DHS knew Petitioner's whereabouts and had the continuing ability to supervise him in the community.

5. On July 8, 2025, DHS issued Interim Guidance taking the position that certain noncitizens who entered the United States without inspection remain subject to mandatory detention under 8 U.S.C. § 1225(b), notwithstanding their prior release into the United States. DHS has subsequently relied upon that position, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and

*Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), in asserting that certain noncitizens previously released into the interior remain applicants for admission subject to detention under § 1225(b). Petitioner disputes that interpretation and contends that, if detention is authorized, the applicable detention authority is 8 U.S.C. § 1226(a).

6. This Petition, however, presents an independent constitutional defect that does not depend solely upon resolution of that statutory dispute. Regardless of whether Respondents characterize Petitioner's present detention as arising under § 1225(b) or § 1226(a), DHS had previously released Petitioner from physical custody and permitted him to remain at liberty for nearly four years while he complied with the conditions imposed upon him. Respondents thereafter revoked that existing liberty without providing Petitioner advance notice, an individualized custody determination, a meaningful opportunity to respond, or a pre-deprivation hearing before a neutral decisionmaker.

7. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, just as he had consistently done since December 2022. Petitioner had received no prior notice that ICE intended to detain him and had no reason to believe that his liberty was at risk when he reported as required.

8. Upon Petitioner's appearance, ICE officers immediately took him into custody. Petitioner had not missed his required ICE appointments, had not violated ATD requirements, and had no criminal history. When Petitioner asked why he was being arrested and detained, ICE did not provide him with an individualized reason for the sudden revocation of his liberty.

9. Petitioner informed ICE that he had a pending asylum application and presented his valid employment authorization document issued in connection with his timely filed asylum application. Despite Petitioner's compliance, his pending immigration proceedings, and his effort to provide information concerning his circumstances, ICE detained him without providing any meaningful

opportunity to present evidence or explain why continued detention was unnecessary.

10. Before taking Petitioner into custody, Respondents did not provide him with notice of the proposed revocation of his liberty, disclose any individualized factual basis demonstrating that detention had become necessary, or provide him an opportunity to respond. Nor was Petitioner afforded a pre-deprivation hearing before a neutral decisionmaker at which Respondents were required to establish an individualized justification for terminating the liberty DHS had previously granted.

11. Petitioner therefore does not merely challenge the conditions or duration of an uninterrupted period of immigration detention. He challenges Respondents' termination of an existing state of liberty that DHS itself created and maintained for nearly four years while Petitioner complied with supervision. The constitutional injury occurred when Respondents revoked that liberty without constitutionally adequate pre-deprivation process.

**12.** A later custody review or other post-deprivation proceeding cannot retroactively provide the process that was absent before Petitioner's liberty was taken. Petitioner accordingly seeks a writ of habeas corpus directing his immediate release from physical custody and restoration of the liberty Respondents revoked without constitutionally adequate process.

## JURISDICTION

13. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

14. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

15. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

16. Venue is proper because Petitioner is detained in Adelanto Detention Center, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## PARTIES

17. Respondent Tonya Andrews is sued in her official capacity as Warden of the Desert View Facility. Respondent Andrews is the physical custodian of Petitioner.

18. Respondent Todd Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Petitioner and has authority to release him.

19. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

20. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

21. Petitioner Kumar is a native and citizen of India.

22. Petitioner entered the United States without inspection on or about October 20, 2022.

23. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant

for Arrest of Alien.

24. DHS thereafter released Petitioner on parole and permitted him to reside in the United States subject to conditions of supervision.

25. As conditions of his release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to ICE as directed.

26. DHS served Petitioner with a Notice to Appear on December 22, 2022, charging him solely under INA § 212(a)(6)(A)(i).

27. Petitioner has an asylum application pending before the Immigration Court.

28. Since his release, Petitioner has complied with the conditions imposed upon him by DHS.

29. Petitioner consistently appeared for his required ICE appointments beginning in December 2022.

30. Petitioner did not violate his ATD requirements or other conditions of supervision.

31. Petitioner has no criminal history.

32. Petitioner timely filed an asylum application and has maintained employment authorization issued in connection with that application.

33. Petitioner has remained gainfully employed while living in the United States.

34. Petitioner has established family ties in the United States.

35. Throughout Petitioner's release, DHS remained aware of Petitioner's whereabouts through his ATD supervision and regular ICE reporting.

36. Prior to September 2, 2026, DHS had not informed Petitioner that he had violated a condition of his release or supervision.

37. Prior to September 2, 2026, Petitioner was not notified that ICE intended to revoke his

liberty and return him to physical custody.

38. On July 8, 2025, DHS issued Interim Guidance asserting that certain noncitizens who entered the United States without inspection remain subject to detention under 8 U.S.C. § 1225(b).

39. DHS has relied upon that position, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), in asserting that certain noncitizens previously released into the United States remain applicants for admission subject to detention under § 1225(b).

40. Petitioner disputes Respondents' characterization of his present detention as mandatory detention under § 1225(b) and contends that, if detention is authorized, the applicable detention authority is 8 U.S.C. § 1226(a).

41. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment.

42. Petitioner appeared at the ICE office because he was complying with the reporting obligations imposed upon him by DHS.

43. At the time he reported, Petitioner had consistently appeared for his required ICE appointments since December 2022.

44. Petitioner had received no advance notice that ICE intended to detain him when he appeared for his appointment.

45. Upon Petitioner's appearance at the ICE office, ICE officers immediately took him into custody.

46. At the time of his detention, Petitioner had not missed his required ICE appointments and had not violated his ATD requirements or other conditions of supervision.

47. Petitioner had no criminal history and was not informed that his detention was based

upon any criminal conduct.

48. After ICE officers took Petitioner into custody, Petitioner asked why he was being detained.

49. ICE officers did not provide Petitioner with an individualized explanation for why his detention had suddenly become necessary.

50. Petitioner informed ICE officers that he had a pending asylum application.

51. Petitioner also presented his valid employment authorization document issued in connection with his timely filed asylum application.

52. Petitioner was not provided a meaningful opportunity to present evidence concerning his continued compliance, employment, family ties, pending asylum proceedings, or other circumstances bearing upon whether detention was necessary.

53. Respondents did not identify to Petitioner any violation of his conditions of release or supervision that required his immediate detention.

54. Respondents did not identify to Petitioner any criminal conduct occurring during his period of release.

55. Respondents did not identify to Petitioner any failure to appear for an ICE appointment or other required proceeding.

56. Before Petitioner's detention, Respondents did not provide him with notice that they intended to revoke his liberty.

57. Respondents did not provide Petitioner with a meaningful opportunity to contest the proposed detention before taking him into physical custody.

58. Respondents did not provide Petitioner with an individualized pre-deprivation hearing before a neutral decisionmaker.

59. Respondents did not provide Petitioner an opportunity, before detention, to present evidence or argument concerning whether his continued detention was necessary.

60. Petitioner was therefore taken from a state of liberty in the community, which DHS had permitted for nearly four years, and returned to physical confinement without advance notice or a pre-deprivation hearing.

61. At the time Respondents revoked Petitioner's liberty, Petitioner had a history of compliance with DHS supervision, no criminal history, gainful employment, valid employment authorization, a pending asylum case, and family ties in the United States.

62. Petitioner's appearance at the ICE office on September 2, 2026—the very occasion on which Respondents detained him—was itself an act of compliance with the reporting requirements DHS had imposed upon him.

63. Petitioner remains detained as a result of Respondents' September 2, 2026 decision to revoke his previously granted liberty.

64. Regardless of whether Respondents contend that Petitioner's present detention is governed by 8 U.S.C. § 1225(b) or § 1226(a), Respondents did not provide Petitioner advance notice, a meaningful opportunity to respond, an individualized custody determination, or a pre-deprivation hearing before taking him into custody.

65. Petitioner seeks restoration of the liberty he possessed immediately before Respondents detained him on September 2, 2026.

## **STATUTORY FRAMEWORK**

66. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section

1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

67. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

68. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

69. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section

1252(a)).

70. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]**.
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

71. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents,

to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

72. Shortly thereafter, the Board of Immigration Appeals ("BIA") issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board's view, § 1225(b)(2)(A) mandates detention of such "applicants for admission" during removal proceedings.

73. The Ninth Circuit has since confirmed that DHS's detention authority must derive from the statute enacted by Congress and may not be expanded through administrative interpretation. See Rodriguez Vazquez v. Bostock, 3: 25-cv-05240 (9th Cir. July 30, 2026). Rodriguez Vazquez reinforces that mandatory detention provisions must be applied according to their statutory terms and that DHS may not invoke mandatory detention where Congress has not authorized it.

74. Petitioner Kumar entered the United States on or about October 20, 2022, without inspection. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter exercised its authority to release him on parole. As conditions of that release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to ICE as directed. DHS subsequently served Petitioner with a Notice to Appear on December 22, 2022, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty in the United States

for nearly four years while complying with DHS supervision, consistently appearing for required ICE appointments, maintaining valid employment authorization based upon his timely filed asylum application, remaining gainfully employed, and maintaining family ties in the United States.

75. Because DHS affirmatively released Petitioner from physical custody and thereafter placed him in removal proceedings under INA § 240, Petitioner contends that any later detention is governed by 8 U.S.C. § 1226(a), which provides a discretionary custody framework and permits an individualized custody determination. Petitioner disputes that DHS may release him into the community, supervise him there for years, and thereafter invoke 8 U.S.C. § 1225(b) to categorically eliminate the individualized custody protections ordinarily associated with § 1226(a).

76. Respondents nevertheless rely upon DHS's July 8, 2025 Interim Guidance, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to assert that certain noncitizens who entered without inspection remain subject to detention under § 1225(b) notwithstanding their prior release into the United States.

77. Petitioner disputes Respondents' statutory interpretation. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* resolves whether DHS may summarily terminate the liberty of an individual whom DHS previously released on parole and supervised in the community for years without providing constitutionally adequate process. Those decisions principally address the statutory custody framework and the scope of Immigration Judge authority; they do not eliminate the independent protections imposed by the Due Process Clause when the Government revokes previously granted physical liberty.

78. Respondents' position also fails to account for the procedural posture DHS itself created. DHS released Petitioner from physical confinement, permitted him to remain in the community under supervision, required him to report regularly to ICE, and allowed that arrangement to continue for nearly four years while Petitioner complied with the conditions imposed upon him. Petitioner

therefore had an existing state of liberty before his September 2, 2026 detention.

79. Independent of the parties' dispute concerning whether § 1225(b) or § 1226(a) ultimately supplies the statutory detention authority, Respondents violated the Fifth Amendment by revoking Petitioner's previously granted liberty without constitutionally adequate pre-deprivation process.

80. Following his release, Petitioner consistently complied with DHS supervision. He appeared for his required ICE appointments beginning in December 2022, complied with ATD requirements, remained available to immigration authorities, and was never advised that he had violated a condition of release or supervision. Petitioner has no criminal history.

81. Petitioner also has an asylum application pending before the Immigration Court. He timely filed his asylum application, obtained valid employment authorization based upon that application, remained gainfully employed, and maintained family ties in the United States. DHS remained aware of Petitioner's whereabouts and immigration proceedings through his regular reporting and continuing supervision.

82. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment. His appearance was itself an act of compliance with the reporting requirements DHS had imposed upon him.

83. Before Petitioner reported to that appointment, DHS had provided no notice that it intended to revoke his liberty or return him to physical custody. Petitioner had not missed his required ICE appointments, had not violated his ATD obligations, and had not been informed of any allegation that he had failed to comply with DHS supervision.

84. Upon Petitioner's appearance at the ICE office, ICE officers immediately detained him.

85. After being taken into custody, Petitioner asked why he was being detained. ICE officers

did not provide him with an individualized explanation establishing why his detention had suddenly become necessary.

86. Petitioner informed ICE that he had a pending asylum application and presented his valid employment authorization document. He further advised officers of his continued compliance with immigration requirements and his history of appearing as directed.

87. Respondents nevertheless detained Petitioner without first providing him a meaningful opportunity to address any asserted concern regarding his custody, compliance, immigration proceedings, employment, family ties, or other circumstances relevant to whether detention was necessary.

88. Before revoking Petitioner's liberty, Respondents did not provide him with advance notice of the proposed deprivation or identify any individualized factual basis demonstrating that immediate detention was required.

89. Respondents did not identify any criminal conduct by Petitioner.

90. Respondents did not identify any violation of Petitioner's ATD requirements or ICE reporting obligations.

91. Respondents did not identify any failure by Petitioner to appear for a scheduled ICE appointment.

92. Respondents did not identify any changed circumstance occurring during Petitioner's years of release that rendered his continued liberty inappropriate.

93. Respondents likewise did not provide Petitioner with an opportunity to present evidence or argument concerning his continued compliance, lack of criminal history, employment, pending asylum proceedings, family ties, or ability to remain available to immigration authorities.

94. Petitioner was not afforded any individualized pre-deprivation hearing before a neutral

decisionmaker.

95. Petitioner was therefore taken from an existing state of liberty in the community and returned to physical confinement without advance notice, without a meaningful opportunity to respond, and without an individualized determination before the deprivation occurred.

96. The absence of such process is particularly significant here because DHS itself had previously determined that Petitioner could remain outside physical custody subject to supervision, and Petitioner thereafter complied with those conditions for nearly four years.

97. Once the Government has granted an individual conditional liberty, the Due Process Clause protects against its arbitrary termination. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

98. Due process generally requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before the Government deprives an individual of a protected liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972).

99. Respondents provided none of those safeguards here. Petitioner voluntarily appeared at his regularly scheduled ICE appointment in full compliance with DHS supervision and was immediately detained despite having no criminal history, no identified supervision violation, a pending asylum proceeding, valid employment authorization, gainful employment, and family ties in the United States.

100. Respondents did not provide Petitioner advance notice that his liberty would be revoked, identify an individualized factual basis for detention before taking him into custody, afford him a meaningful opportunity to respond, or provide any individualized pre-deprivation hearing.

101. The constitutional violation was complete when Respondents terminated Petitioner's previously granted liberty without constitutionally adequate pre-deprivation process.

102. A later custody review or post-deprivation hearing cannot retroactively provide the process that was absent before Petitioner's physical liberty was taken. Such a proceeding would occur only after the challenged deprivation had already occurred and therefore would not restore the pre-deprivation protections Petitioner alleges the Fifth Amendment required.

103. Accordingly, Petitioner seeks immediate release from physical custody and restoration of the liberty that existed immediately before Respondents detained him on September 2, 2026.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Petitioner's Procedural Due Process Rights

104. The allegations in the above paragraphs are realleged and incorporated herein.

105. The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law

106. Under Mathews v. Eldridge, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the governmental interests at stake.

107. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution.

108. Petitioner possessed an existing and substantial liberty interest arising from DHS's prior decision to release him on parole and permit him to remain at liberty in the community subject to ATD supervision and regular ICE reporting requirements.

109. For nearly four years, Petitioner remained at liberty pursuant to DHS's release decision while complying with the conditions imposed upon him. He consistently appeared for required ICE appointments, complied with ATD requirements, maintained valid employment authorization based upon

his pending asylum application, remained gainfully employed, maintained family ties in the United States, and remained continuously available to immigration authorities.

110. Petitioner has no criminal history and, prior to September 2, 2026, had never been advised that he violated any condition of his release or supervision.

111. The risk of erroneous deprivation was substantial because Respondents revoked Petitioner's previously granted liberty without advance notice, without identifying any violation or changed circumstance requiring detention, without affording Petitioner a meaningful opportunity to respond, and without providing an individualized pre-deprivation determination before a neutral decisionmaker.

112. Additional procedural safeguards—including advance notice of the proposed detention, disclosure of the factual and legal basis for revocation, a meaningful opportunity to present contrary evidence and argument, and an individualized pre-deprivation hearing—would have substantially reduced the risk of erroneous deprivation while imposing comparatively modest administrative burdens upon Respondents.

113. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment in compliance with the reporting requirements imposed upon him.

114. Prior to taking Petitioner into custody, Respondents failed to provide:

a. advance notice that DHS intended to revoke his liberty;

b. notice of any alleged violation, changed circumstance, or other individualized basis for detention;

c. a meaningful opportunity to contest the factual or legal basis for detention;

d. an individualized custody determination; or

e. a pre-deprivation hearing before a neutral decisionmaker.

115. Upon Petitioner's appearance at the ICE office, Respondents immediately detained him.

116. After being taken into custody, Petitioner asked why he was being detained. Respondents did not provide him with an individualized explanation demonstrating why detention had suddenly become necessary.

117. Petitioner informed ICE that he had a pending asylum application and presented his valid employment authorization document. He further informed officers of his continued compliance with DHS supervision.

118. Respondents nevertheless detained Petitioner without providing him any meaningful opportunity to explain his circumstances, present evidence concerning his compliance, employment, family ties, pending immigration proceedings, or otherwise contest the proposed deprivation before his liberty was taken.

119. Respondents did not identify any criminal allegation, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other intervening event that justified the sudden termination of Petitioner's previously granted liberty.

120. Nor did Respondents make or provide Petitioner with any individualized determination, before detention, that he presented a danger to the community, a risk of flight, or any other circumstance requiring immediate physical confinement.

121. Respondents therefore revoked Petitioner's existing liberty without constitutionally adequate notice, without a meaningful opportunity to be heard, and without an individualized pre-deprivation process.

122. Under the circumstances alleged here, the Government's interests did not justify dispensing entirely with pre-deprivation process. Petitioner had remained subject to ongoing DHS supervision for nearly four years, had consistently appeared as directed, and voluntarily presented himself to ICE on

September 2, 2026. Nothing prevented Respondents from providing meaningful procedures before terminating his liberty.

123. The constitutional violation occurred when Respondents deprived Petitioner of his previously granted liberty without providing the process constitutionally required before that deprivation.

124. A later custody review or other post-deprivation proceeding cannot retroactively provide the notice, opportunity to respond, and individualized determination that were absent before Petitioner was taken into physical custody.

125. Petitioner's detention therefore violates the Due Process Clause of the Fifth Amendment, and habeas relief restoring Petitioner to the liberty he possessed immediately before his September 2, 2026 detention is warranted.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

126. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

127. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

128. Petitioner entered the United States without inspection on or about October 20, 2022. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter exercised its authority to release him on parole subject to ATD supervision and regular ICE reporting requirements.

129. DHS served Petitioner with a Notice to Appear on December 22, 2022, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty in the United States for nearly four

years while his immigration proceedings remained pending.

130. Throughout that period, Petitioner complied with the conditions imposed upon him by DHS. He consistently appeared for required ICE appointments, complied with ATD requirements, remained continuously available to immigration authorities, maintained valid employment authorization based upon his pending asylum application, remained gainfully employed, maintained family ties in the United States, and has no criminal history.

131. On September 2, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, as DHS required him to do and as he had consistently done since December 2022.

132. Despite Petitioner's history of compliance and voluntary appearance, ICE officers immediately detained him.

133. Petitioner asked why he was being detained. Respondents did not identify any criminal conduct, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other individualized factual circumstance demonstrating that Petitioner's physical confinement had become necessary.

134. Petitioner informed ICE that he had a pending asylum application and presented his valid employment authorization document. Respondents nevertheless continued with his detention without identifying any individualized change in Petitioner's circumstances warranting the termination of the liberty DHS had previously granted him.

135. Petitioner's re-detention was not preceded by any identified failure to comply with DHS supervision, criminal conduct, or other intervening event demonstrating that the Government's prior determination permitting Petitioner to remain at liberty in the community was no longer appropriate.

136. Instead, Respondents rely upon a categorical interpretation of the immigration detention statutes reflected in DHS's July 8, 2025 Interim Guidance and decisions including *Matter of Q. Li*, 29 I&N

Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), notwithstanding DHS's prior decision to release Petitioner from physical custody and his subsequent years of compliance.

137. Petitioner disputes Respondents' contention that this categorical statutory interpretation permits his detention under 8 U.S.C. § 1225(b). But even apart from the parties' statutory dispute, civil immigration detention remains subject to the constraints of the Due Process Clause and must bear a reasonable relationship to a legitimate governmental purpose. *See Zadvydas*, 533 U.S. at 690.

138. Here, Respondents permitted Petitioner to remain at liberty under DHS supervision for nearly four years. During that period, Petitioner demonstrated his continued availability to immigration authorities by consistently complying with reporting requirements and appearing as directed. His voluntary appearance at the September 2, 2026 ICE appointment further demonstrated his continued compliance and availability to DHS.

139. Respondents nevertheless terminated Petitioner's physical liberty without identifying any individualized circumstance showing that detention had become necessary to address a danger to the community, a risk of flight, a failure to comply with DHS supervision, or another legitimate custody concern.

140. Under these circumstances, subjecting Petitioner to physical confinement solely on the basis of a categorical change in Respondents' interpretation of the governing detention statute, despite DHS's prior release decision and Petitioner's nearly four years of demonstrated compliance, is arbitrary and bears no reasonable relationship to an individualized need for detention.

141. The Government may possess legitimate interests in ensuring appearance at immigration proceedings and protecting the community. But Respondents did not identify any individualized facts demonstrating that Petitioner's detention furthered either interest where Petitioner has no criminal history, consistently appeared as required, complied with DHS supervision, and voluntarily presented himself for

the very ICE appointment at which he was detained.

142. Respondents' re-detention of Petitioner under these circumstances constitutes an arbitrary deprivation of physical liberty in violation of the substantive component of the Fifth Amendment's Due Process Clause.

143. Petitioner's continued physical confinement perpetuates that unconstitutional deprivation of liberty.

144. Accordingly, Petitioner seeks immediate release from physical custody and restoration of the liberty he possessed immediately before Respondents detained him on September 2, 2026.

**COUNT THREE**

**Violation of the Immigration and Nationality Act**

145. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

146. Shortly after entering the United States, Petitioner was detained pursuant to a Form I-200, Warrant for Arrest of Alien, and thereafter released on parole by DHS subject to ATD supervision and regular ICE reporting requirements.

147. DHS thereafter permitted Petitioner to remain at liberty in the United States for nearly four years while pursuing his asylum application.

148. Respondents now contend that Petitioner is subject to detention under 8 U.S.C. § 1225(b) and ineligible for meaningful custody review.

149. Respondents rely upon DHS's July 8, 2025 Interim Guidance, Matter of Q. Li, and Matter of Yajure-Hurtado to support that position.

150. Neither Matter of Q. Li nor Matter of Yajure-Hurtado authorizes DHS to revoke previously granted liberty and re-detain fully compliant noncitizens years after release without individualized

justification.

151. If Petitioner is detained at all following DHS's grant of liberty, such detention must comport with the statutory framework governing discretionary custody determinations and cannot be transformed into mandatory detention through a retroactive reinterpretation of the detention statutes.

152. Respondents' categorical reliance upon § 1225(b) exceeds their statutory authority and is contrary to law.

153. Because Petitioner's detention is not authorized by the INA, habeas relief under 28 U.S.C. § 2241 is warranted.

**COUNT FOUR**

**Violation of the Administrative Procedure Act**

154. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

155. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 704, and 706.

156. DHS's determination that Petitioner is subject to detention under 8 U.S.C. § 1225(b), together with its September 2, 2026 decision to re-detain Petitioner when he voluntarily appeared for his regularly scheduled ICE appointment, constitutes agency action challenged herein.

157. DHS's application of § 1225(b) to Petitioner—who was initially detained pursuant to a Form I-200, thereafter released on parole, permitted to remain at liberty under DHS supervision for nearly four years, and placed in removal proceedings while pursuing his pending asylum application before the Immigration Court—is contrary to Petitioner's understanding of the statutory framework governing his detention.

158. By treating Petitioner as categorically subject to detention under § 1225(b), notwithstanding DHS's prior release of Petitioner on parole and his subsequent placement in removal

proceedings, Respondents have acted in excess of the detention authority conferred by the INA.

159. DHS's action is arbitrary and capricious because the agency:

a. provided no individualized custody determination;

b. relied upon a revised legal interpretation rather than any new conduct or changed factual circumstance;

c. disregarded Petitioner's years of compliance and lawful presence in the community; and

d. failed to account for Petitioner's substantial reliance interests arising from DHS's prior release decision.

160. An agency changing course must provide a reasoned explanation and consider serious reliance interests created by prior agency action.

161. DHS provided no individualized explanation for reversing its prior determination that detention was unnecessary.

162. Because Respondents' custody determination is contrary to law, exceeds statutory authority, and is arbitrary and capricious, it must be set aside pursuant to 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

2. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

3. Declare that Respondents' revocation of Petitioner's previously granted liberty and continued detention violate the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act;

4. Vacate and set aside Respondents' unlawful custody determination pursuant to 5 U.S.C. § 706;

5. Order Petitioner's immediate release from ICE custody and restoration of the liberty status previously granted by DHS;

6. Enjoin Respondents from continuing to detain Petitioner absent constitutionally adequate procedures and lawful statutory authority;

7. Award Petitioner his reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;

8. Retain jurisdiction to enforce any order entered in this matter; and

9. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully,
*/s/ Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 4th day of September, 2026.

*/s/ Gurpreet Kaur*
Gurpreet Kaur, Esq.